# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODGER WILLIAMS, | Civil Action No. 16 – 1284 |
| Plaintiff, | |
| v. | Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT TREVOR WINGARD, MR. JOSEPH, *Program Case Manager*, MS. MCCLELLAND, *Unit Manager*, C.O. RARDIN, C.O. DAVIS, DR. DEMPSEY, DR. KARAMUDIL, LT. BROTHERS, | ECF No. 63 |
| Defendants. | |

## OPINION AND ORDER

**A. Background**

Pending before the Court is Plaintiff's Renewed Motion for Preliminary Injunction filed on December 22, 2016, (ECF No. 63), on which a hearing was held on March 17, 2017, (ECF No. 90). Plaintiff is a transgender inmate presently incarcerated at SCI-Somerset.[1] In her Second Amended Complaint, (ECF No. 33), she claims, *inter alia*, that she has received inadequate psychiatric treatment for her post-traumatic stress issues that stem from her being sexually assaulted by a prison guard during a previous incarceration.[2] She further claims that her

---

[1] Plaintiff has indicated that she wishes to be referred to in female terms.

[2] Plaintiff claims that she was raped on multiple occasions by Corrections Officer Harry Nicoletti while incarcerated at SCI-Pittsburgh from March 2009 through July 2010. She states that Nicoletti would remove her from her cell that she shared with another inmate, isolate her and rape her, and then place her in Z-code housing to silence her. At the hearing on March 17, 2017,

1

current Z-code (single cell) status is contributing to her psychiatric issues as this was the housing she was in when she was assaulted. She maintains that she is unable to sleep at night and that a cellmate would make her feel more comfortable and aid with her post-traumatic stress symptoms including flashbacks, insomnia, and night sweats. In her Motion for Preliminary Injunction, she requests that this Court order Defendants to lift her Z-code housing status so she can be assigned a cellmate. For the following reasons, the Motion will be denied.

### B. Standard for Issuance of Preliminary Injunction

Preliminary injunctive relief is an extraordinary remedy and should issue in only limited circumstances. Four factors inform a district court's decision to issue a preliminary injunction: (1) whether the movant has shown "a reasonable probability" of success on the merits; (2) whether the movant will suffer "irreparable" harm if denied relief; (3) whether the requested relief will cause greater harm to the nonmovant; and (4) whether an injunction is in the public's interest. Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012). "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of America v. Independent Opticians of American, 920 F.2d 187, 192 (3d Cir. 1990). The moving party's "failure to establish any element . . . renders a preliminary injunction inappropriate." NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151, 153 (3d Cir. 1999). Furthermore, when the preliminary injunction is directed not merely at preserving the status quo but at providing mandatory relief, the burden on the moving party is particularly heavy. United States v. Spectro Foods Corp., 544 F.2d 1175, 1181 (3d Cir. 1976).

---

Plaintiff stated that CO Nicoletti was charged and convicted of these crimes. This statement, however, is incorrect. CO Nicoletti was charged with various allegations of inmate abuse, but he was not charged with rape, nor convicted of a single count of involuntary deviate sexual intercourse, institutional sexual assault, or indecent assault.

## C. Discussion

After reviewing the record in this case, including the testimony and evidence presented at the hearing held on the Motion on March 17, 2017, the Court finds that issuance of a preliminary injunction is not warranted; primarily because Plaintiff has failed to establish that she will suffer irreparable harm if the injunction is not granted. For this reason, the Court will address only the irreparable harm factor in this Opinion.

Irreparable harm is harm of such an irreversible character that prospective judgment would be inadequate to make the moving party whole. Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). The mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. Id. at 164.

In her Motion for Preliminary Injunction, Plaintiff argues that her single cell housing status poses a serious risk of damage to her future psychological and physical health because it exacerbates her post-traumatic stress disorder ("PTSD"). She states that every hour she spends segregated causes her significant emotional, physical, and mental distress, which cannot be alleviated absent preliminary injunctive relief. Defendants, however, argue that reference to inability to sleep at night and distress over an alleged assault that occurred during a prior incarceration years ago, and at another institution, do not establish immediate and irreparable harm.

The record in this case, including the testimony and evidence presented at the hearing on March 17, 2017, establishes the following. Plaintiff has been single-celled on Z-code status since May 18, 2016, when she was incarcerated at SCI-Camp Hill. A note in her Inmate Cumulative Adjustment Records ("ICAR"), dated May 27, 2016, reveals that she was assigned a temporary Z-code due to her misconduct history, which included sexual harassment in 2005 and

indecent exposure in 2012. Her ICAR also reveals that additional concerns included a misconduct received at the Allegheny County Jail in 2003 for assault after throwing hot coffee on and stabbing an inmate with a pen. More recently, in September of 2015, Plaintiff received disciplinary action at Westmoreland County Prison for engaging in sexual relations with her cellmate. Also of concern was that Plaintiff requested two cellmates, both of which were high risk sex abusers.[3]

Plaintiff was transferred to SCI-Somerset in June 2016, where she remained Z-coded. She was housed in the general population at SCI-Somerset, but in a single cell. On August 2, 2016, Jennifer McClelland, a Unit Manager at SCI-Somerset, received an inmate request form from other inmates on the unit with Plaintiff expressing concerns about Plaintiff upsetting the atmosphere on the block by offering sexual favors and walking around the day room inappropriately dressed. McClelland states that she discussed appropriate attire with Plaintiff on a number of occasions, informing her that when outside her cell she is required to wear two t-shirts, a t-shirt and a bra, or a brown shirt. However, Plaintiff has persisted in dressing inappropriately in defiance of direct orders of prison staff.

Plaintiff's Z-code status was reviewed in September 2016, and it was determined that the Z-code status would continue based on her prior history of assaultive and her ongoing sexually inappropriate behavior, including failure to wear proper attire while outside her cell.

With respect to her mental health, Plaintiff states that she was diagnosed with depression and PTSD as early as 2002. She maintains that Defendants were aware of her history with PTSD because it was documented in an Intra-System Transfer Reception Screening Form that was

---

[3] Plaintiff states that she was not aware that the two inmates she requested as cellmates were high risk abusers. She states that she chose those inmates because she felt safe with them.

completed upon her transfer to SCI-Somerset on June 28, 2016.[4] In support of her PTSD diagnoses, she offers the deposition testimony of psychiatrist, Dr. Karamundi, who saw Plaintiff approximately four or five times for medication management. Dr. Karamundi testified in his deposition that Plaintiff suffers from gender dysphoria and PTSD, and has had symptoms of depression and insomnia. However, the last time she saw Dr. Karamundi was on January 6, 2017, at which time Plaintiff refused to sit. Plaintiff said she wanted to see another psychiatrist by tele-psychiatry, signed a refusal to see Dr. Karamundi and left the office.

Defendants rely on the testimony of Dr. Dempsey, the licensed psychologist manager at SCI-Somerset. He testified that the Intra-System Transfer Reception Screening Form is a self-reporting document by the inmate. In other words, it is simply a reflection of what the inmate reports to staff, not the opinion of the medical staff. Additionally, he testified that he diagnosed Plaintiff with "unspecified stressor disorder," not PTSD, but the treatment of which is similar to that of PTSD. Finally, he testified that on September 13, 2016, he completed a review regarding Plaintiff's request for a change in her Z-code status. He states that at the time of his evaluation of Plaintiff, she appeared to be stable and was not experiencing any acute mental health issues, including no suicidal/homicidal ideations. Plaintiff further reported that she was not experiencing any issues on the unit or with any other inmates, and that she felt safe. Therefore, from a psychological standpoint, Dr. Dempsey felt that Plaintiff had no need for a cellmate and that being single-celled was not detrimental to her mental health. However, it was his opinion

---

[4] In that same Form, Plaintiff reported that she does not have tendencies of acting out with sexually aggressive behavior, she does not have a history of sexually assaultive behavior, and she is not at risk for sexual victimization. According to Plaintiff, she does not need protection from other inmates just because she is transgender. In fact, SCI-Somerset has other transgender inmates who are not Z-coded.

that other security factors that are not under psychology's purview be considered when making the final determination concerning her Z-code status.

After reviewing the evidence, the Court finds that Plaintiff has not demonstrated that she will suffer irreparable harm if the injunction is not granted. While Plaintiff may or may not suffer from PTSD, and experience symptoms such as insomnia, flashbacks, and night sweats, she has presented no evidence that she will suffer immediate irreparable harm if her Z-code is not lifted. Plaintiff has been single-celled since May 2016, and there is no evidence that she has suffered mental and emotional harm of an irreversible nature during the past year when she did not have a cellmate. If Plaintiff truly was at risk of immediate, irreparable harm if her Z-code was not lifted, then there would already be evidence of such harm since she has spent the last year without a cellmate. While she claims that a cellmate would make her feel more comfortable and help to alleviate her PTSD symptoms, a showing that that the issuance of a preliminary injunction would aid or assist in the plaintiff's mental, emotional or physical health is not the standard. Since Plaintiff has presented no evidence that after a year of being single-celled she will suddenly suffer irreparable harm if she is not immediately given a cellmate, the Court will deny her request for preliminary injunction. Accordingly, this 7th day of April, 2017,

**IT IS HEREBY ORDERED** that Plaintiff's Renewed Motion for Preliminary Injunction (ECF No. 63) is **DENIED**.

**IT IS FURTHER ORDERED** that a Responsive Pleading to Plaintiff's Second Amended Complaint shall be filed no later than April 28, 2017.

Lisa Pupo Lenihan
United States Magistrate Judge